UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JOHN MANUEL SILVA, | ) | Civil No. 12-CV-1314 LAB (NLS) |
| Petitioner, | ) | **REPORT AND** |
| | ) | **RECOMMENDATION FOR** |
| v. | ) | **ORDER DENYING FIRST** |
| | ) | **AMENDED PETITION FOR** |
| MATTHEW CATE, and KAMALA D. HARRIS, | ) | **WRIT OF HABEAS CORPUS** |
| | ) | |
| Respondents. | ) | (Dkt. No. 12.) |
| | ) | |

Currently pending before this Court is Petitioner John Manuel Silva's ("Petitioner") first amended petition for a writ of habeas corpus. (Dkt. No. 12.) Respondents filed an answer on September 4, 2013, and Petitioner filed a traverse on December 23, 2013. (Dkt. Nos. 30 and 40.) The first amended petition sets out three ineffective assistance of counsel claims and one claim for prosecutorial misconduct. (Dkt. No. 12.) For the reasons set forth below, it is **RECOMMENDED** that the first amended petition be **DENIED** in its entirety.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Petitioner does not appear to challenge the sufficiency or the admissibility of the evidence underlying his convictions. In light of this, the facts of his crimes will not be recounted except as necessary to conduct the analysis below. Briefly, Petitioner was accused of molesting his niece Vanessa, his two nephews Joshua and Jesus, and Alex, a

boy that lived in his neighborhood.

All four children testified at trial, and on March 20, 2009, a jury convicted Petitioner of thirteen counts of committing a lewd act upon a child under the age of fourteen. The jury also found that as to each count Petitioner had substantial sexual conduct with a child under the age of fourteen. The court found true allegations that Petitioner had committed the offenses against more than one victim. He was sentenced to a total terms of 87 years to life in prison.[1]

Petitioner filed a direct appeal of his conviction. (Lodgment 2.) He claimed he received ineffective assistance of counsel because counsel requested an amendment to count eleven of the information[2] and that the trial court erred in allowing the amendment. *Id.* The Court of Appeal found that any error by the trial court in allowing the amendment was invited error, and that Petitioner was unable to demonstrate that a different result would have occurred in the absence of any error by counsel. (Lodgment 4.) Petitioner then filed a petition for review on the same grounds, which was denied. (Lodgments 5 and 6.)

Petitioner subsequently filed a petition for writ of habeas corpus in San Diego County Superior Court. (Lodgment 7.) In that petition, he raised the same claims as those included in the pending first amended petition. *Id.* The petition was denied on the basis that Petitioner could have raised the claims on direct appeal, but did not do so. (Lodgment 8.) Although Petitioner argued ineffective assistance of counsel in his direct appeal, the grounds for the claim were different. *Id.* The Superior Court also found that Petitioner's claim of prosecutorial misconduct could have been raised on direct appeal. *Id.* That Court went on to note:

> [T]he petition does not include any evidence of prosecutorial misconduct other than Petitioner's speculation...Therefore, even if this Court considered Petitioner's claim of prosecutorial misconduct, Petitioner failed to set forth a

---

[1] This description of Petitioner's conviction and sentence is substantially taken from the Court of Appeal's order at Lodgment 4.

[2] The amendment expanded the time period covering Petitioner's crimes against Alex.

1    prima facie statement of facts that would entitle him to habeas corpus relief.

2    *Id.*

3          After the petition in Superior Court was denied, Petitioner filed a petition for writ

4    of habeas corpus with the Court of Appeal, raising the same claims. (Lodgment 9.) The

5    Court of Appeal stated:

> 6    Petitioner could have raised the contentions alleged here on direct appeal. (*In*
> 7    *re Clark* (1993) 5 Cal.4th 750, 765.)  Furthermore, to the extent petitioner contends that this petition is not procedurally barred, or that appellate counsel
> 8    was ineffective by failing to raise these additional issues, petitioner has not shown he was prejudiced.  Indeed, on direct appeal, we concluded that, given
> 9    the evidence at trial and petitioner's defense, "[t]here is not a reasonable probability that a different result would have occurred in the absence [of] any
> 10    error by defense counsel." [Citation omitted.]  Petitioner fails to state a prima facie case that he was prejudiced by counsel's alleged shortcomings. (*People*
> 11    *v. Duvall*, (1995) 9 Cal.4th 464, 474-475; *Smith v. Robbins* (2000) 528 U.S. 259, 285.)

12    (Lodgment 10.)  The Court of Appeal denied the petition.  *Id.*

13          Petitioner then filed a petition for writ of habeas corpus with the California

14    Supreme Court, raising the same claims. (Lodgment 11.) The petition was denied.

15    (Lodgment 12.)  He filed another petition for a writ of habeas corpus in San Diego

16    Superior Court, and it was denied on the grounds that Petitioner had raised the same

17    claims in an earlier petition, and Petitioner had not set forth any justification for

18    reconsidering the issues. (Lodgments 13 and 14.)

19    **II.   LEGAL STANDARD**

20        **A.    AEDPA Governs this Petition**

21          The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs this

22    Petition.  *See Lindh v. Murphy*, 521 U.S. 320, 336-37 (1997).  Under AEDPA, a federal

23    court will not grant habeas relief with respect to any claim adjudicated on the merits in

24    state court unless the decision was (1) contrary to or involved an unreasonable

25    application of clearly established federal law; or (2) based on an unreasonable

26    determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d); *Early*

27    *v. Packer*, 537 U.S. 3, 7-8 (2002).  "Clearly established federal law," for purposes of

28    AEDPA, means "the governing principle or principles set forth by the Supreme Court at

the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003).

A federal habeas petition must allege a deprivation of one or more federal rights; the federal court will not "reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

## B. Decisions that Contradict or Unreasonably Apply Federal Law

A federal habeas court may grant relief where the state court (1) decides a case contrary to federal law by applying a rule different from the governing law set forth in Supreme Court cases; or (2) decides a case differently than the Supreme Court on a set of indistinguishable facts. *Bell v. Cone*, 535 U.S. 685, 694 (2002). A federal court may also grant habeas relief where a state court decision is an unreasonable application of federal law, such as where the state court correctly identifies the governing legal principle from Supreme Court decisions but unreasonably applies those decisions to the facts in issue. *Id.*

The state court decision must be more than incorrect or erroneous; to warrant habeas relief "the state court's application of clearly established law must be objectively unreasonable." *Lockyer*, 538 U.S. at 75. "Objectively unreasonable" differs from "clear error" in that a federal court cannot grant habeas relief solely on the basis that it believes the state court erroneously or incorrectly applied clearly established federal law; the application must be objectively unreasonable. *Id.* at 75-76. That standard under AEDPA is difficult to meet and "demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, __ U.S. __, __, 131 S. Ct. 1388, 1398 (2011) (internal quotations omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011) (internal quotation omitted).

## C. Decisions Based on an Unreasonable Determination of Facts

Section 2254(e)(1) provides: "a determination of a factual issue made by a State

court shall be presumed to be correct." The petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.*

### D.   Review of State Court Decision

If the California Supreme Court silently denies a Petitioner's appeal with a summary dismissal, the reviewing federal habeas court must look through to the last reasoned state court opinion in making a decision. *See Medina v. Hornung*, 386 F.3d 872, 877 (9th Cir. 2004). Here, the decision from the San Diego Superior Court dated September 22, 2011, is the last reasoned state court decision that addresses Petitioner's claim of prosecutorial misconduct. (Lodgment 8.) The California Court of Appeal decision filed January 6, 2012, is the last reasoned state court decision addressing Petitioner's pending allegations regarding ineffective assistance of counsel. (Lodgment 10.)

## III.   ANALYSIS

In the first amended petition, Petitioner asserts three different grounds to support his claim that he received ineffective assistance of counsel. (Dkt. No. 12.) He also alleges that the prosecutor engaged in misconduct. *Id.*

### A.   Ineffective Assistance of Counsel

A defendant is denied his Sixth Amendment right to counsel when a defense attorney's performance falls below an objective standard of reasonableness, thereby prejudicing the defense. *Yarborough v. Gentry*, 540 U.S. 1, 4 (2003); *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Counsel's errors must be so serious that the result of the proceeding was fundamentally unfair or unreliable. *Lockhart v. Fretwell*, 506 U.S. 364, 369-70 (1993). In assessing counsel's performance, the court employs a strong presumption that counsel rendered adequate assistance and exercised reasonable professional judgment. *Strickland*, 466 U.S. at 690. The court's review of counsel's performance is "doubly deferential when it is conducted through the lens of federal habeas." *Yarborough*, 540 U.S. at 6.

To prevail on a claim of ineffective assistance of trial counsel in federal court,

1   Petitioner must have first established in state court that his trial counsel's performance

2   fell below an objective standard of reasonableness.  *Strickland*, 466 U.S. at 687.  "This

3   requires a showing that counsel made errors so serious that counsel was not functioning

4   as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Id.*  Second, he

5   must have shown counsel's deficient performance prejudiced the defense, such that the

6   result of the proceeding would have been different absent counsel's errors.  *Id.*  On

7   federal habeas review, "the question is not whether counsel's actions were reasonable,

8   [but] whether there is any reasonable argument that counsel satisfied *Strickland*'s

9   deferential standard." *Harrington,* 131 S. Ct. at 788.  The Court need not address the

10   performance prong if the claim can be resolved on the ground of lack of sufficient

11   prejudice.  *Strickland*, 466 U.S. at 697.

12        The state court concluded that Petitioner did not set out a prima facie case for

13   ineffective assistance of counsel because he failed to show any prejudice.  (Lodgment

14   10.)

15                    1.    Failure to Obtain an Expert

16        Petitioner alleges that defense counsel failed to obtain an expert to testify on his

17   behalf, and "[t]he complete lack of effort by defense counsel...to retain an expert for

18   rebuttal testimony at trial was [a] completely and constitutionally deficient

19   performance[.]"  (Dkt. No. 12 at 15.[3])

20        At a hearing held two days before trial was scheduled to begin, defense counsel

21   argued that the prosecution untimely disclosed that one of the fact witnesses would also

22   be testifying as an expert.  (Lodgment 16, vol. 1 at 24-26.)  He informed the trial court

23   that his client would not be able to pay for an expert, and he discussed the steps that

24   would be necessary to obtain an expert at government expense.  *Id.* at 26-28.  Counsel

25   had not begun the lengthy administrative process to obtain expert funding because of the

26   short window of time between being notified the prosecution's witness would testify as

27

28        [3]Citations to page numbers in the parties' submissions refer to those assigned by
     the ECF system.

1    an expert and the scheduled start of the trial. *Id.* at 28. Although the trial court was not

2    inclined to exclude the prosecution's expert, it did grant a continuance of the trial to

3    allow defense counsel an opportunity to look into procuring an expert. *Id.* at 30-31.

4        At a hearing held before the new trial date, defense counsel informed the trial court

5    that he had been in touch with several potential experts, but "every single expert [he]

6    contacted told [him] they would not work for county funds." (Lodgment 16, vol. 2 at 46.)

7    At that point, Petitioner indicated that he wanted to proceed with the trial rather than

8    obtain another continuance. *Id.*

9        Petitioner appears to not believe counsel's statement that he could not find an

10   expert. *See* Dkt. No. 12 at 14 ("Defense counsel...repeatedly misled petitioner into

11   believing no expert wanted to work for state funds."). However, he offers nothing to

12   support this belief. Mere speculation that an expert could be found is insufficient to

13   obtain habeas relief. *Wildman v. Johnson*, 261 F.3d 832, 839 (9th Cir. 2001). This Court

14   is unaware of any Supreme Court precedent that requires defense counsel to compel an

15   unwilling expert to testify in order to provide effective assistance of counsel.

16       Petitioner suggests several possible categories of experts that might have been

17   obtained, such as a psychologist who could present "case studies as evidence of children

18   who have wrongly accused an individual with fabricated allegations to falsely incriminate

19   said person" or a forensics expert who "could have administered polygraph tests of all the

20   parties involved" and who could have examined "the accused's vehicles, his home and

21   objects purported to have been used in the commission of the alleged crimes." (Dkt. No.

22   40 at 11-12.) These statements are also speculation, and do not establish prejudice. *See*

23   *Grisby v. Blodgett*, 130 F.3d 365, 373 (9th Cir. 1997) (a petitioner cannot establish

24   prejudice by speculating what an expert might have said).

25       Defense counsel argued to exclude the prosecution's expert, and made efforts to

26   obtain an expert to testify on behalf of Petitioner. He also engaged in a lengthy cross-

27   examination of the prosecution's expert. (Lodgment 16, vol. 7 at 769-794.) The state

28   court concluded that Petitioner did not demonstrate that he was prejudiced by counsel's

1  actions, and this was not an unreasonable determination of the facts or an unreasonable or

2  contradictory application of clearly established federal law.

3      Accordingly, it is **RECOMMENDED** that Petitioner's claim for ineffective

4  assistance of counsel on the grounds that defense counsel did not obtain an expert be

5  **DENIED**.

6          2.      Failure to Call Rosa Romo as a Defense Witness

7      Petitioner alleges he received ineffective assistance of counsel because his attorney

8  did not call Petitioner's "common law wife," Rosa Romo, as a defense witness at trial.

9  (Dkt. No. 12 at 18.)  He asserts that Ms. Romo would have testified that she was always

10  at home, had an excellent relationship with the victims, and that the victims resented

11  Petitioner because he was strict with them.  *Id.* at 19-20.

12      There is no indication that counsel committed prejudicial error by not calling Ms.

13  Romo to testify.  "Mere criticism of a tactic or strategy is not in itself sufficient to support

14  a charge of inadequate representation."  *Gustave v. U.S.*, 627 F.2d 901, 904 (9th Cir.

15  1980).  The record indicates that during trial Ms. Romo improperly communicated with

16  Vanessa, one of the victims, and may have attempted to dissuade her from testifying.

17  (Lodgment 16, vol. 4 at 197-98.)  The trial court ruled that the improper conversation was

18  relevant to establish Ms. Romo's possible motive and bias.  *Id.* at 204.  However, the trial

19  court made it clear that the conversation would only be relevant if Ms. Romo testified.

20  (Lodgment 16, vol. 5 at 226.)  After learning about the conversation, defense counsel

21  stated he was "second-guessing" calling Rosa as a witness.  (Lodgment 16, vol. 4 at 214.)

22      It is evident that counsel's decision to not call Ms. Romo was a reasonable and

23  strategic decision, and such a decision is entitled to deference by this Court.  *Yarborough*,

24  540 U.S. at 6; *see also U.S. v. Harden*, 846 F.2d 1229, 1232 (9th Cir. 1988) (counsel's

25  decision to not call a witness who may be subject to impeachment does not rise to the

26  level of ineffective assistance of counsel).

27      The state court concluded that Petitioner did not show he was prejudiced by

28  counsel's actions, and this was not an unreasonable or contradictory application of clearly

1    established federal law or an unreasonable determination of the facts. Accordingly, it is

2    **RECOMMENDED** that Petitioner's claim for ineffective assistance of counsel on the

3    grounds that defense counsel did not call Ms. Romo to testify be **DENIED**.

4                   3.    Failure to Introduce E-mail Correspondence

5         Attached to the first amended petition is a string of e-mails between Ms. Romo's

6    daughter, Irma, and Irma's husband, Cesar.  (Dkt. No. 12 at 54-60.)  The e-mails

7    reference a "rescue" plan for Vanessa, one of the victims, and discuss the fact that she

8    contacted her counselor at school about abuse.  *Id.* at 54.  The e-mails also discuss

9    making arrangements for Joshua, another victim, to move in with Irma and Cesar.  *Id.* at

10   58.  Petitioner claims that these e-mails are evidence of "an obvious plan of hatred and

11   revenge to falsely accuse and inculpate" him, and argues that defense counsel's decision

12   to not introduce the e-mails amounted to ineffective assistance of counsel.  (Dkt. No. 12

13   at 24.)  The e-mails were taken from Irma's e-mail account by her sister Claudia, and the

14   parties disputed whether Claudia had lawful access to Irma's account.  (Lodgment 16,

15   vol. 4 at 112-113.)

16        Defense counsel discussed the admissibility and relevance of the e-mails several

17   times with the trial court and the prosecution, and the prosecution objected to the e-mails

18   on several grounds.  (Lodgment 16, vol. 4 at 110-114, vol. 6 at 559-569 and 595-98.)

19   According to the record, the primary significance of the e-mails was to impeach Irma's

20   testimony about the events surrounding Irma's invitation to Joshua to come live with her

21   and her husband.[4]  *Id.* at 559-60 and 596-97.  Due to the uncertainty surrounding the

22   admissibility of the questionably obtained e-mails, the attorneys agreed to meet and

23   confer with Irma off the record about the dates in question so she would be able to testify

24   competently without introducing the e-mails into evidence.  *Id.* at 596-98.  Both the

25   prosecution and defense counsel examined Irma about her discussions with the victims

26   about leaving Petitioner's residence, and the plans they may have had.  *Id.* at 556-58 and

27

28         [4]Petitioner also argues that the e-mails should have been introduced as evidence in
     his defense, and not used solely for impeachment.  (Dkt. No. 40 at 22.)

                                              9                        12-CV-1314 LAB (NLS)

611-12.  The prosecution also questioned Irma about Vanessa's report of abuse to her school counselor.  *Id.* at 617-19.

There is no apparent error by defense counsel.  The decision to not use the e-mails was a reasonable and strategic decision, given the possibility that they might be excluded and the dispute as to whether they were properly obtained.  Counsel was able to cross-examine the witness about the events in question without using the e-mails, and the information contained in the e-mails was brought out during the trial.  Petitioner has not demonstrated that the outcome of his trial would have been different if the e-mails had been introduced.  Therefore, he cannot show he was prejudiced by counsel's decision.

The state court's determination that Petitioner was not prejudiced by counsel's actions was not an unreasonable determination of the facts or an unreasonable or contradictory application of clearly established federal law.  Accordingly, it is **RECOMMENDED** that Petitioner's claim for ineffective assistance of counsel on the grounds that defense counsel did not offer the e-mails into evidence be **DENIED**.

### B.   Claim of Prosecutorial Misconduct

Petitioner also claims that the prosecutor in his case committed misconduct by telling defense counsel that if he called Ms. Romo as a witness, she would "incarcerate her" because she may have threatened Vanessa, one of the victims.  (Dkt. No. 12 at 18.)  As a result, Petitioner alleges defense counsel was "intimidated" into not calling her as a witness.  *Id.* at 19.

"A prosecutor's actions constitute misconduct if they 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"  *Wood v. Ryan*, 693 F.3d 1104, 1113 (9th Cir. 2012) quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986).  In analyzing a claim of prosecutorial misconduct in the context of a habeas petition, such acts warrant relief only if they "had substantial and injurious effect or influence in determining the jury's verdict."  *Brecht v. Abrahamson,* 507 U.S. 619, 637-38 (1993).

The state court found that there was no evidence in the petition to support a claim

1  for prosecutorial misconduct and that Petitioner failed to state a prima facie claim.

2  (Lodgment 8 at 3.)  This Court agrees.  It is evident from the record that the decision

3  whether to call Ms. Romo rested with defense counsel.  *See* Lodgment 16, vol. 4 at 197

4  ("I might not put on Roma Romo as a witness.  There's a small possibility I may not.  I

5  expect to call her, but I may not.")  After learning about the improper conversation

6  between Ms. Romo and Vanessa, defense counsel "second-guess[ed]" his initial plan to

7  call her to testify.  *Id.* at 214.  There is nothing to indicate the prosecution had any effect

8  on that decision.  In fact, it appears that the prosecutor was concerned that Ms. Romo

9  might not testify because it would limit her ability to introduce evidence to rebut the

10  defense's theory that the allegations were part of a plan of revenge.  *See id.* at 209

11  ("[O]bviously, I have a huge objection to something being said in opening and then now

12  when it becomes an issue less than an hour later, 'Oh, well, I'm not even really going to

13  call her, so you can't go into it.'").  Petitioner attached a statement by Ms. Romo to the

14  first amended petition, and it does not mention any threats by the prosecution.  (Dkt. No.

15  12 at 61.)[5]  The only support for Petitioner's claim of prosecutorial misconduct is his own

16  declaration.  (Dkt. No. 12 at 64.)  It is well-established that a self-serving statement is

17  insufficient to raise a claim for habeas relief.  *Turner v. Calderon*, 281 F.3d 851, 881

18  (2002).

19      The state court's determination that Petitioner did not state a claim for

20  prosecutorial misconduct was not an unreasonable determination of the facts or an

21  unreasonable or contradictory application of clearly established federal law.

22  Accordingly, it is **RECOMMENDED** that Petitioner's claim for prosecutorial

23  misconduct be **DENIED**.[6]

24

25  [5]Petitioner also cites to a letter purportedly from Ms. Romo that is attached to the
    first amended petition as further support for his claim.  (Dkt. No. 12 at 62-63.)  This letter
26  is not in English and is not signed.  Therefore, the Court will not consider it.

27  [6]Petitioner also makes a general claim that "[t]he prosecution's late disclosure of
    calling their own expert was willful and motivated by a desire to gain a tactical and
28  [prejudicial] advantage.  This outweighed the adversary process of a fair trial."  (Dkt. No.
    12 at 14.)  To the extent Petitioner is arguing that this was prosecutorial misconduct, he

## C.  __Request for Evidentiary Hearing__

Petitioner argues that an evidentiary hearing is required to address the issues in his petition.  (Dkt. No. 40 at 14.)  "An evidentiary hearing is *not* required on issues that can be resolved by reference to the state court record."  *Totten v. Merkle*, 137 F.3d 1172, 1176 (9th Cir. 1998) (emphasis in original); *see also Cullen*, 131 S.Ct. at 1398.  This Court is able to resolve Petitioner's claims by reference to the state court record, and therefore Petitioner's request for an evidentiary hearing is **DENIED**.

## IV.   CONCLUSION

Due to the fact that this Court concludes that the first amended petition has no merit, the undersigned will not address Respondent's alternative argument that Petitioner's claims are procedurally barred.

Petitioner has not demonstrated that he is entitled to federal habeas relief.

**ACCORDINGLY**, it is hereby

**RECOMMENDED** that Petitioner's first amended petition for a writ of habeas corpus (dkt. no. 12) be **DENIED**.

This report and recommendation is submitted to the United States District Judge assigned to this case pursuant to 28 U.S.C. § 636(b)(1).

**IT IS ORDERED** that no later than __April 25, 2014__, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

///
///
///
///
///
///

cannot establish prejudice because the trial date was continued to allow defense counsel an opportunity to investigate obtaining a rebuttal expert.  (Lodgment 16, vol. 1 at 31-32.)

1      **IT IS FURTHER ORDERED** that any reply to the objections shall be filed with

2  the Court and served on all parties no later than **May 9, 2014.**  The parties are advised

3  that failure to file objections within the specified time may waive the right to raise those

4  objections on appeal of the Court's order.  *Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir.

5  1991).

6      **IT IS SO ORDERED.**

7

8  DATED:  March 28, 2014

9

10

11                    Hon. Nita L. Stormes
                  U.S. Magistrate Judge
                  United States District Court

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

12-CV-1314 LAB (NLS)